## LATCHTIMACKER v. JACKSONVILLE TOWING & WRECKING CO.

(Circuit Court, S. D. Florida. April 29, 1910.)

1. COURTS (§ 353*)—APPEAL AND ERROR (§ 977*)—FEDERAL COURTS—PROCEDURE—MOTION FOR NEW TRIAL.

   In the federal courts, the ruling of the trial court on a motion for new trial is a matter of discretion, not affected by the conformity statute nor the state practice, and not reviewable.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 933; Dec. Dig. § 353;* Appeal and Error, Cent. Dig. § 3860; Dec. Dig. § 977.*]

2. DAMAGES (§ 132*)—PERSONAL INJURY—EXCESSIVE VERDICT.

   A verdict for $10,000 to a plaintiff, 27 years old, with an earning capacity of $20 per month and an expectancy of 37 years, for a personal injury necessitating the amputation of one arm and one leg, held excessive, and a remittitur reducing it to $4,826 required to avoid a new trial.

   [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.*]

At Law. Action by Edward Latchtimacker against the Jacksonville Towing & Wrecking Company. On motion by defendant for a new trial. Motion granted conditionally.

This is an action for personal injuries sustained by the plaintiff, Latchtimacker, a seaman, engaged aboard the American barkentine Josephine. The declaration contained two counts with slight variation, alleging that the defendant, the Jacksonville Towing & Wrecking Company, so negligently performed the towage service rendered the barkentine as to cause his injuries. The alleged negligence consisted in suddenly veering and pulling the tow at right angles, causing the chock through which the hawser passed to part, allowing the hawser to slip from the chock and catch the plaintiff Latchtimacker between the hawser and the cathead, felling him and breaking a leg and arm resulting in the amputation of both limbs. Defendant to this declaration pleaded the general issue and contributory negligence. The size and sufficiency of the chock for all ordinary use both as to its resistance to the hawser used and size for a vessel of the tonnage of the Josephine, was claimed for the vessel.

The plaintiff at the time of the injury was 27 years old, and had signed aboard as an A. B. seaman, but it was in fact his first voyage at sea. His previous experience consisted of two years' work on coal barges in and about Norfolk and Baltimore. The highest wages he had commanded was $20 per month. His life expectancy was shown to be 37 years. The plaintiff at the time of the accident was standing forward of the hawser and chock, coiling jib sheets under orders of the chief mate. He had put one foot across the hawser to go aft, when looking to the starboard side he perceived the tug at

right angles to the vessel. Just at that moment the hawser parted the chock, and caught him about the legs and he remembered no more.

The defendant's witnesses, all shipmasters and experts testified that the position occupied by the plaintiff around the hawser while the vessel was under tow was very dangerous; that experienced seamen would not expose themselves to danger so imminently liable from a parting hawser; that there was no necessity for coiling jib sheets or down hauls until the vessel was placed at the dock; that, when the pilot came aboard, he took charge, to the exclusion of the master, of all matters pertaining to the navigation of the vessel. It was shown that the plaintiff was engaged at the time and place of the accident under orders from the mate.

The surgeons who attended the plaintiff testified to the necessity of the amputations and plaintiff's condition at the time. It was shown that the plaintiff had been able to earn scarcely anything since his injuries. The only evidence of suffering since leaving the hospital, where he remained for six months, was the plaintiff's own statement that he "suffered more or less still, and, when he walked too much, he could not sleep at night." Defendants produced several witnesses, shipmasters, to show that there was nothing unusual in the manner of towing the vessel at the place, and that it was sometimes necessary in order to turn the tow about to go at right angles in the manner described. The pilot on board the vessel at the time the plaintiff was injured testified that he had warned the men, including the plaintiff, to get back and away as soon as the hawser was made fast. This, however, was contradicted by the plaintiff's witnesses. The captain of the tug testified that he had used his best skill in towing the barkentine into port; that there was nothing unusual in the manner of bringing the vessel around; that he knew nothing of the accident to the plaintiff until he reached May port, but had slackened up for a moment when informed that the hawser had slipped, to allow the crew to replace it in the chock.

John E. Hartridge, for plaintiff.
N. P. Bryan, for defendant.

SHEPPARD, District Judge (after stating the facts as above). This cause was tried to a jury on the 19th of April, and a verdict was rendered in favor of the plaintiff assessing his damages at $10,000. A motion for a new trial was entered, two grounds only of which I deem it necessary to consider, viz.: (1) That the verdict was contrary to the evidence; (2) that the verdict was excessive.

I have carefully reviewed the testimony and have considered the case at some length. In federal practice such motions are addressed to the sound discretion of the court, and are considered and disposed of independent of any state statute or prevailing practice in the courts of the state where the trial was had. The exercise of a judicial discretion on such motions is not reviewable in federal practice. The exercise of the court's discretion is a rule of law established by the Supreme Court of the United States and is not controlled by the "conformity act," not affected by any state statute on the subject. Fishburn v. Chicago, M. & St. Paul Ry., 137 U. S. 61, 11 Sup. Ct. 8, 34 L. Ed. 585; Indianapolis Ry. Co. v. Horst, 93 U. S. 301, 23 L. Ed. 898. Naturally all courts are reluctant to grant new trials, and for good reasons will not grant them unless it is reasonably clear that prejudicial error has crept into the record, and only after a review of the entire record the court is satisfied that there is error, or that there must have been in the minds of the jury some other element than the evidence, or that the jury misconceived the testimony, and made a mistake. In either event, the responsibility of curing the mistake rests

upon the trial court, and, taking such view of it, the duty of the court is plain to see that justice does not miscarry. While I was not at all clear at the trial that the plaintiff's own negligence in remaining in a place of known danger when it was apparent that the hawser might part, and that just such an accident as happened might occur at any moment, was not such contributory negligence as to preclude recovery, the conflict in the testimony as to plaintiff's position and movements preceding and concurring with the accident reduces the question of negligence to one of fact, which was proper to be determined by a jury. In this class of cases negligence only becomes a question of law to be taken from the jury, when the facts are such that fair-minded men could only draw from them the inference that there was no negligence. When because of conflicting testimony reasonable men might draw different inferences as to the negligence charged it is a question of fact for the determination of a jury. Having submitted then the question of negligence to the jury, their verdict as to the first ground of the motion is conclusive.

The only remaining ground of the motion necessary to be considered is whether the verdict is excessive. The serious importance of this question to the defendant appears when it is seen that, if a mistake has been made by the jury, it is susceptible of correction in no other way than by the court that tried the case on a motion for a new trial. The Supreme Court in more than one case has said:

"Whether the verdict was excessive is not our province to determine on writ of error. The correction of that error, if any were committed, must be in the court below on motion for a new trial. The granting or refusal to grant a new trial is not assignable for error here."

Precedents are numerous for granting new trials in personal injury cases where excessive verdicts have been given. Railroad Co. v. Winter, 143 U. S. 60, 12 Sup. Ct. 356, 36 L. Ed. 71.

I have considered the testimony in view of the verdict rendered, and do not find that the evidence warranted a verdict for $10,000. Plaintiff's earning capacity was shown to be $20 per month, or $240 per year. The plaintiff's life expectancy was shown to be 37 years. The court instructed the jury, in connection with plaintiff's requested instructions for estimating damages, the rule established by the Supreme Court of this state for estimating plaintiff's prospective losses in the future during his life expectancy for his diminished earning capacity, that such future damages should be reduced to their present value, and the present value thereof only should be included in their verdict. Tested by this rule, the income necessary to produce an annuity of $240 per year for 37 years, plaintiff's life expectancy, would be $2,826.04. The sum allowed by the verdict placed at 8 per cent. which is the current rate in the vicinity of the trial, would yield $800 per annum, and this sum would exceed plaintiff's annuity based on his established earning capacity by $560 per year. There was no showing that the plaintiff incurred by reason of his injury any expense on account of board, nurse hire, or medical treatment, neither was there shown any wantonness or reckless negligence on the part of the defendant for which exemplary damages might have been awarded. The only other element of compensatory damages which

the jury was authorized to estimate damages for would be for physical pain and mental suffering, which were inseparable from the injury, and which would necessarily and inevitably flow from it.

Mental pain which is separable from physical suffering, such as future pain or mortification from a crippled condition, have been held to be too remote and intangible to constitute an element for which the jury could allow damages. While it might be difficult to estimate the plaintiff's physical and mental pain, and while a wide latitude is allowed the jury in estimating for this element, it should nevertheless be confined within reasonable limits, and not left to arbitrary adjustment. The estimate of $2,000 for mental pain and physical suffering consequent upon and inevitable as a result of the injury would under the circumstances have been a reasonable and liberal allowance. Therefore, after due consideration of the case, I have reached the conclusion that a verdict for $4,826 should not be set aside. Plaintiff therefore will be given the right to elect whether he will enter a remittitur for the excess of this amount or take chances on another trial.

It will be ordered accordingly that if the plaintiff enters a remittitur in this case by the 1st day of June, A. D. 1910, in the sum of $5,174, judgment will be entered in his favor for the sum of $4,826 and all costs in his behalf expended to be taxed by the clerk of this court.